# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLIN SHOLES, *et al.* <br><br> Plaintiffs <br><br> v. <br><br> TORCHLIGHT TECHNOLOGY GROUP LLC, *et al.* <br><br> Defendants | Civil Action No. 21-1294 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

III. LEGAL STANDARD ....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 4

    A. THERE IS NO CAUSE OF ACTION FOR AN ACCOUNTING OR A PERMANENT INJUNCTION UNDER PENNSYLVANIA LAW ....................... 5

    B. THERE IS NO CAUSE OF ACTION FOR A BREACH OF GOOD FAITH AND FAIR DEALING UNDER PENNSYLVANIA LAW. ........................................... 6

    C. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS DUPLICATIVE OF THEIR BREACH OF CONTRACT CLAIM. ........................................................ 7

    D. PLAINTIFFS' CLAIMS ARE BARRED BY THE GIST OF THE ACTION DOCTRINE. ........................................................................................................ 8

    E. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT. ... 9

    F. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNFAIR COMPETITION. ... 11

    G. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD IN THE INDUCEMENT BECAUSE OF THE PAROL EVIDENCE RULE. .................. 12

V. CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 400 Walnut Assocs., L.P.*,
 454 B.R. 60 (Bankr. E.D. Pa. 2011) ...................................................................................6

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
 No. CIV.A. 04-2535, 2007 WL 2541216 (E.D. Pa. Aug. 29, 2007) .........................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................................4

*Batoff v. Charbonneau*,
 130 F. Supp. 3d 957 (E.D. Pa. 2015) ................................................................................13

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................4

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*,
 247 F.3d 79 (3d Cir. 2001).................................................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997)...........................................................................................10

*Butta v. GEICO Cas. Co.*,
 400 F. Supp. 3d 225 (E.D. Pa. 2019) ..................................................................................7

*Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*,
 460 F. Supp. 3d 560 (E.D. Pa. 2020) ..................................................................................9

*Certainteed Ceilings Corp. v. Aiken*,
 2015 WL 410029 (E.D. Pa. Jan. 29, 2015) .........................................................................8

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
 618 F.3d 253 (3d Cir. 2010).............................................................................................12

*Fowler v. UPMC Shadyside*,
 578 F.3d 203 (3d Cir. 2009)...............................................................................................4

*Giordano v. Claudio*,
 714 F. Supp. 2d 508 (E.D. Pa. 2010) ................................................................................11

*In re Lincoln Nat'l COI Litig.*,
 269 F. Supp. 3d 622 (E.D. Pa. 2017) ..................................................................................7

*McCabe v. Marywood Univ.*,
    166 A.3d 1257 (Pa. Super. 2017)......................................................................................6

*McWreath v. Range Res.--Appalachia, LLC*,
    81 F. Supp. 3d 448 (W.D. Pa. 2015) ................................................................................5

*Pellegrino v. Epic Games, Inc.*,
    451 F. Supp. 3d 373 (E.D. Pa. 2020) .............................................................................12

*Resol. Tr. Corp. for Hill Fin. Sav. Ass'n v. Residential Devs. Fund Partners*,
    No. CIV. A. 90-1195, 1991 WL 193363 (E.D. Pa. Sept. 17, 1991) .................................5

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010).............................................................................................4

*In re Shop–Vac Mktg. & Sales Practices Litig.*,
    964 F. Supp. 2d 355 (M.D. Pa. 2013) ..............................................................................5

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
    955 F. Supp. 2d 452 (E.D. Pa. 2013) ...............................................................................5

*Smithkline Beecham Corp. v. Cont'l Ins. Co.*,
    No. CIV.A. 04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004) ..................................8

*State Auto Ins. Co. v. Summy*,
    234 F.3d 131 (3d Cir. 2000).............................................................................................7

*Teva Pharm. USA, Inc. v. Sandhu*,
    291 F. Supp. 3d 659 (E.D. Pa. 2018) ...............................................................................5

*Unified Sportsmen of Pa. ex rel. Their Members v. Pa. Game Comm'n*,
    903 A.2d 117 (Pa. Cmwlth. 2006) ...................................................................................7

*Toy v. Metro. Life Ins. Co.*,
    593 Pa. 20, 928 A.2d 186 (2007) ...................................................................................12

*Weiser v. Great Am. Ins. Co.*,
    453 F. Supp. 3d 711 (E.D. Pa. 2020) ...............................................................................6

*Wilson v. Hartford Cas. Co.*,
    No. CV 20-3384, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020) ....................................11

*Wulf v. Bank of Am., N.A.*,
    798 F. Supp. 2d 586 (E.D. Pa. 2011) ...............................................................................6

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
    578 Pa. 479, 854 A.2d 425 (2004) .................................................................................12

I.  **INTRODUCTION**

Plaintiffs' sprawling Complaint attempts to disguise the fact that this is a straightforward but meritless breach of contract and copyright infringement action.  With regard to copyright infringement, Plaintiffs allege that an agreement they signed with Defendant Torchlight Technology Group ("TTG") reserved certain intellectual property rights for a piece of software called Global ID.  It didn't.  With regard to breach of contract, Plaintiffs allege that in exchange for signing that agreement, they were promised equity that they never received.  They weren't

But even crediting Plaintiffs' incorrect factual allegations as true, the Complaint fails to state a claim for breach of contract.  First, Plaintiffs' breach of contract claim fails with respect to Global ID.  The agreements Plaintiffs allege to have "excepted out" Global ID make no mention of that software at all.  And Plaintiffs completely fail to mention that they signed similar agreements in April of 2016 that did not "except out" Global ID either, for the simple fact that it was developed nearly a year later while Plaintiffs were working for TTG.  Nevertheless, if the agreements at issue are construed to "except out" Global ID, that would mean that Global ID would not be included in the rights conferred by the agreements.  Plaintiffs fail to explain how they can base a breach of contract claim with respect to Global ID on an agreement that they contend excludes Global ID.

Second, Plaintiffs' breach of contract claim fails with respect to any equity because the agreements are fully integrated and do not provide Plaintiffs with the equity rights they attempt to claim.  It is black letter law that a fully integrated contract represents a complete expression of <u>all</u> the terms agreed upon between the parties.  As the relevant agreements make absolutely no mention of the equity rights that Plaintiff allege formed the consideration for the agreement, their breach of contract claim fails as a matter of law.  The Court should therefore dismiss the breach of contract claim with prejudice.

Perhaps recognizing that their claims lack substance, Plaintiffs attempt to make up for it in volume.  The Court should not be fooled.  All of Plaintiffs' tort claims restate the same allegation: the alleged but illusory breach of contract claim.  Pennsylvania's "gist of the action" doctrine prevents Plaintiffs from recasting their breach of contract claim into multiple tort claims.  To make matters worse, Plaintiffs assert duplicative causes of action, invent others out of whole cloth, and attempt to state others without any factual support.  The Court should dismiss them accordingly.

Plaintiffs' Complaint ultimately raises a single claim for breach of contract and a single claim for copyright infringement, but the breach of contract claim fails as a matter of law.  As a result, the Court should dismiss all claims in Plaintiffs' Complaint other than the copyright infringement claim.

## II.     FACTUAL BACKGROUND

The Complaint makes a series of factual assertions that Moving Defendants vigorously contest.  Nonetheless, for purposes of this motion, Moving Defendants will describe the (incorrect) facts alleged by Plaintiffs.

This is not a complicated dispute.  Plaintiffs Colin Sholes and Carl Vernon allege that they form Plaintiff Cure Consulting LLC ("Cure") in 2013.  (Compl. ¶ 16.)  Sholes owns and operates Cure.  (Compl. ¶ 4.)  Defendant Torchlight Technology Group, LLC ("TTG") is a data lead broker.  (Compl. ¶ 25.)  Defendants Matthew Morano, Helene Seydoux, and Andrew Guy were the founders and principles of TTG.  (Compl. ¶ 9.)  They allegedly created Defendant Torchlight Equity Comp, LLC ("TEC") to hold any proceeds should TTG be sold.  (Compl. ¶ 40.)

Around 2014, TTG retained Sholes and Vernon as consultants.  (Compl. ¶ 23.)  In that capacity, Sholes and Vernon created software for TTG and licensed it them.  (Compl. ¶ 23.)  In

return, TTG paid a licensing fee in the form of a profit share. (Compl. ¶ 28.) TTG later sought to retain Sholes and Vernon as employees and obtain exclusive use of any software they developed in that capacity. (Compl. ¶¶ 31, 34.) As compensation, Sholes and Vernon were each granted a 9% equity stake in TTG. (Compl. ¶ 46.)

Upon their employment by TTG, Sholes and Vernon signed Proprietary Information, Competition, and Inventions Assignment Agreements (the "Agreements") on May 30, 2017 and May 2, 2017, respectively. (Compl. ¶¶ 41, 44.) The Agreements state clearly that any intellectual property created by Sholes and Vernon for TTG would be owned by TTG and considered works for hire. (Compl. Ex. B at ¶ 3(b).) The Agreements, however, allowed Sholes and Vernon to exclude certain intellectual property from the Agreements. (Compl. ¶ 42.) Specifically, the Agreements state:

> I acknowledge that there are no currently existing ideas, processes, inventions, discoveries, marketing or business ideas or improvements which I desire to exclude from the operation of this Agreement, unless a reference thereto has been included on Exhibit A attached hereto. (Compl. ¶ 43.)

Exhibit A to the Sholes Agreements, reads, in relevant part,

> Reporting and tracking software used by Cure Consulting / AdSolve which interfaces with Torchlight's systems (including by [sic] not limited to – health_track, rover, grok, ladman) (Compl. ¶ 43, Ex. B.)

In June of 2019, after Sholes and Vernon signed the Agreements, Defendant Independence Holding Company ("IHC") bought a 23% equity stake in TTG. (Compl. ¶ 56.) In April of 2020, IHC purchased the remaining equity in TTG. (Compl. ¶ 64.) Sholes and Vernon did not receive any payments for either of these transactions. (Compl. ¶ 72, 78, 79.)

Plaintiffs further allege that Cure owns a copyright for a program called Global ID. (Compl. ¶ 21.) Plaintiffs purport to have created Global ID in January of 2017, which as Plaintiffs are well aware, was <u>after</u> they first started their employment with TTG. (Compl. ¶ 19.)

3

Plaintiffs allege that TTG continues to use Global ID without permission, even though Global ID was a work for hire for which TTG owns intellectual property rights under the relevant agreements and under the Copyright Act. (Compl. ¶¶ 80, 81.)

### III. LEGAL STANDARD

Plaintiffs' Complaint fails to state valid claims for anything other than copyright infringement. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Plaintiffs must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).

Accordingly, in evaluating Moving Defendants' Motion to Dismiss, the Court should take note of the elements Plaintiffs must plead to state a claim. The Court also should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, the Court should assume their veracity and determine whether they plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Application of this analysis to Plaintiffs' claims demonstrates that they nearly all fail to state claims upon which relief can be granted.

### IV. ARGUMENT

The Court should dismiss all of Plaintiffs' state law claims for failure to state a claim for which relief can be granted. Plaintiffs assert several duplicative claims and attempt to assert

4

other causes of action that do not even exist. For the most part, Plaintiffs' claims are simply recasts of their breach of contract claim, and are therefore barred by the gist of the action doctrine. Other claims suffer from inadequate factual support or impermissibly depend on inadmissible allegations. The result of Plaintiffs' failings is that the Court should dismiss the state law claims entirely.

### A. There is no cause of action for an accounting or a permanent injunction under Pennsylvania law.

The Court can easily dismiss Plaintiffs' claims for an accounting (Count VIII) and for a permanent injunction (Count XI) because there are no such causes of action under Pennsylvania law. Rather, an accounting and a permanent injunction are remedies that can be pled as potential relief in other causes of action. *See Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013) ("An injunction is a remedy, not a separate claim or cause of action.") (quotation and citation omitted); *Resol. Tr. Corp. for Hill Fin. Sav. Ass'n v. Residential Devs. Fund Partners*, No. CIV. A. 90-1195, 1991 WL 193363, at *24 (E.D. Pa. Sept. 17, 1991) ("Though styled by RTC in its complaint as separate causes of action, Count IV seeking imposition of a constructive trust, and Count V seeking an accounting, are equitable remedies, not causes of action."). *See, also, e.g., McWreath v. Range Res.--Appalachia, LLC*, 81 F. Supp. 3d 448, 468 (W.D. Pa. 2015) ("[A] legal accounting is a potential remedy for separate legal claims."); *In re Shop–Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) ("[I]njunctive relief is a remedy, not an independent cause of action.").

Where requests for an accounting or an injunction are improperly pled as additional "counts," they are properly dismissed. *E.g. Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 681 (E.D. Pa. 2018) ("An injunction is a remedy rather than a cause of action. A separate claim for injunctive relief is unnecessary."); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales*

*Practices Litig.*, No. CIV.A. 04-2535, 2007 WL 2541216, at *34 (E.D. Pa. Aug. 29, 2007) ("[Defendants] have moved to dismiss on the ground that an accounting is not a cause of action, but a remedy.  The Court agrees and will dismiss the accounting count in the three complaints."). The Court should do likewise and dismiss Plaintiffs' claims for an accounting and an injunction.

**B.     There is no cause of action for a breach of good faith and fair dealing under Pennsylvania law.**

Along similar lines, the Court should dismiss Plaintiffs' breach of good faith and fair dealing claim (Count III) because it is duplicative of and subsumed by their breach of contract claim (Count II).  "Pennsylvania does not recognize an independent cause of action for breach of a covenant of good faith and fair dealing."  *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 n.2 (Pa. Super. 2017).  *See also Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 594 (E.D. Pa. 2011) ("Pennsylvania does not recognize a separate cause of action for breach of good faith and fair dealing for the actions forming the basis of the breach of contract claim."); *In re 400 Walnut Assocs., L.P.*, 454 B.R. 60, 73 (Bankr. E.D. Pa. 2011) ("In Pennsylvania, there is no free-standing claim for breach of good faith.").

Rather, a breach of good faith and fair dealing claim is simply a breach of contract claim by another name.  Therefore, where a complaint alleges <u>both</u> a breach of contract claim and a breach of good faith and fair dealing claim, as Plaintiffs do here, the claims are duplicative.  The good faith and fair dealing claim is dismissed because it is subsumed under the breach of contract claim.  *See, e.g., Weiser v. Great Am. Ins. Co.*, 453 F. Supp. 3d 711, 719 (E.D. Pa. 2020).  The Court should therefore dismiss Plaintiffs' claim for breach of good faith and fair dealing.

### C. Plaintiffs' declaratory judgment claim is duplicative of their breach of contract claim.

The Court should dismiss Plaintiffs' declaratory judgment claim (Count I) because it is likewise duplicative of the breach of contract claim.[1]  Whether to entertain a request for a declaratory judgment is within the discretion of the court.  *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000), as amended (Jan. 30, 2001) ("[The Declaratory Judgments Act] contemplates that district courts will exercise discretion in determining whether to entertain such actions."); *see also Unified Sportsmen of Pa. ex rel. Their Members v. Pa. Game Comm'n*, 903 A.2d 117, 125 (Pa. Cmwlth. 2006) ("The granting of a petition for declaratory judgment is a matter within the sound discretion of a court of original jurisdiction.").  Moreover, the Third Circuit "urges courts to exercise their discretion to decline proceeding with declaratory judgments when they duplicate other claims."  *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019) (citing *State Auto Ins. Co.*, 234 F.3d at 134).

Here, Plaintiffs' declaratory judgment claim merely restates their breach of contract claim.  In the declaratory judgment count, Sholes asks the Court to find the "Proprietary Agreement to be a valid and enforceable document."  (Compl. Count I wherefore clause.)  In the breach of contract claim (Count II) Sholes asks the Court to award him damages for Defendants' alleged breach of the Proprietary Agreement.  To prevail on that claim, Sholes must prove that the Proprietary Agreement is a valid and enforceable document.  Therefore, the validity of the Proprietary Agreement will be resolved through the breach of contract claim.  Sholes' declaratory judgment claim is redundant, and therefore, should be dismissed.  *See, e.g. In re*

---

[1]  Plaintiffs strangely purport to bring their claim under Pennsylvania's Declaratory Judgment Act and Rule 1602 of the Pennsylvania Rules of Civil Procedure.  Both of those are procedural rules — not substantive grants of authority — and therefore do not apply in this court.  Nevertheless, whether construed under Pennsylvania's Declaratory Judgment Act or the federal Declaratory Judgment Act, the end result is the same – dismissal.

*Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 640 (E.D. Pa. 2017) (dismissing declaratory judgment claim where adjudication of breach of contract claim would "necessarily require resolution" of relief requested in declaratory judgment claim); *Smithkline Beecham Corp. v. Cont'l Ins. Co.*, No. CIV.A. 04-2252, 2004 WL 1773713, at *2 (E.D. Pa. Aug. 4, 2004) (dismissing declaratory judgment claim that would "require resolution of the same issues raised" in breach of contract claim).

### D. Plaintiffs' claims are barred by the gist of the action doctrine.

Pennsylvania law squarely forecloses Plaintiffs' tort claims. "Pennsylvania's gist of the action doctrine is employed to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." *Certainteed Ceilings Corp. v. Aiken*, 2015 WL 410029, at *6 (E.D. Pa. Jan. 29, 2015) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014)). The gist of the action doctrine thus generally bars tort claims that arise solely from a contract between the parties, where the duties allegedly breached were created by and grounded in the contract itself, where liability stems from a contract, or where the claim essentially duplicates a breach of contract claim or the success of which is wholly dependent upon the terms of a contract." *Id.* at *7 (citation omitted); *see also Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 (3d Cir. 2001) (describing gist of the action test).

Here, the gist of the action test bars several of Plaintiffs' claims because they all arise out of alleged agreements between the parties. In their breach of fiduciary duty claim (Count VI), Plaintiffs specifically state that Defendants allegedly breached duties arising out of the Agreements. (Compl. ¶ 130 ("As mentioned above, Plaintiff Sholes and Vernon and Defendants Morano, Seydoux and Guy entered into an Agreement.") They do the same with their unjust enrichment/quantum meruit claim (Count IV). (Compl. ¶ 116 ("As mentioned above, on May 7, 2017, Plaintiff Sholes and Cure Consulting, LLC entered into a Proprietary Agreement with

Defendant TTG.")  Similarly, Plaintiffs' fraud, conversion, theft and embezzlement claim (Count VII) allegedly arises out of a contract.  (Compl. ¶¶ 138 ("As mentioned above, in order to induce Plaintiffs to work for Defendant TTG and in order to have exclusive use to Plaintiffs' software and IP, Defendants promised Plaintiff equity in Defendant TTG.")  And while Plaintiffs never clearly state the basis of their civil conspiracy claim (Count IX), it appears to be based on an alleged conspiracy to break promises Defendants supposedly make to Plaintiffs regarding equity.

In short, these tort claims would not exist without some type of agreement, whether it be an agreement regarding the use of intellectual property or an agreement regarding equity.  They are breach of contract claims, not tort claims.  *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 575–76 (E.D. Pa. 2020) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim should be treated as one for breach of contract.") (citing *Bruno*, 106 A.3d at 68).  The gist of the action doctrine bars Plaintiffs from recasting them as such.  The Court should therefore dismiss Counts IV, V, VII, and IX of Plaintiffs' Complaint under the gist of the action doctrine.

      **E.**      **Plaintiffs fail to state a claim for breach of contract.**

Plaintiffs' breach of contract claim (Count III) collapses upon the slightest scrutiny. Plaintiffs allege that Defendants have breached the Proprietary Agreement with Sholes by using Sholes' "software and IP without the license to do so," particularly, Global ID.  (Compl. ¶ 99.) When looking at the provision under which Sholes alleges he retained IP rights, however, Global ID is conspicuously not listed.  (Compl. ¶¶ 43, 44.)

And for good reason.  Global ID was created *after* Sholes began his employment with TTG.  In a striking lack of candor with the Court, Plaintiffs fail to mention that the May 2017

9

Agreements (attached to the Complaint) were the <u>second</u> such agreements Sholes and Vernon signed with TTG.  In fact, and Plaintiffs surely know, Sholes and Vernon each signed agreements in <u>April of 2016</u> that were substantially identical to the Agreements attached to the Complaint.[2]  Those earlier agreements, just like the Agreements as issue here, made no mention of Global ID, because Global ID had not yet been created.  Plaintiffs concede that Global ID was not created until January of 2017, well after they had signed the April 2016 agreements … a fact that Plaintiffs must have known when they incorrectly alleged that it was "made prior to" Sholes and Vernon's employment with TTG.  (*See* Compl. ¶¶ 43, 44.)

Even setting aside Plaintiffs' lack of candor with the Court, the Complaint fails to state a claim for breach of contract.  Tellingly, Plaintiffs do not point to any particular provision of the Proprietary Agreement that TTG is supposedly breaching.  Nor could they.  Even accepting Plaintiffs' allegations as true, if Global ID was "excepted out" of the Proprietary Agreement, then it would be outside the scope of the Proprietary Agreement.  The Proprietary Agreement sets out the rights of the parties with respect to intellectual property and proprietary information that is <u>included</u> within the scope of the agreement, not <u>excluded</u> from it.  Defendants cannot be in breach of a contract with respect to software that Plaintiffs allege is specifically exempted from that contract.  The Court should dismiss the breach of contract claim.

Although Plaintiffs' breach of contract claim is somewhat muddled, Sholes also appears to allege that Defendants' breach the Proprietary Agreement by failing to pay him for an equity

---

[2]   Unfortunately, because Plaintiffs simply pretend that the earlier agreements do not exist, the Rules of Civil Procedure prevent the Court from considering them at this stage.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.").  Before filing this motion, counsel for Moving Defendants informed Plaintiffs' counsel of these earlier agreements (their clients apparently had not told them about them) and requested that Plaintiffs' withdraw the Complaint accordingly.

10

interest he supposedly had in TTG. (Compl. ¶ 96.) Again, Sholes does not and cannot point to any particular provision of the Agreement that he alleged Defendants' breached in this regard. The Agreement simply does not mention the equity interest to which Sholes believes he is entitled.

What the Agreement does contain is an integration clause. That clause makes it clear that the Agreement "is intended to be the final, complete, and exclusive statement of the terms of the parties' agreements" regarding the use of intellectual property. (Compl. Ex. B at ¶ 12.) If Sholes believes he should have been compensated for TTG's use of certain intellectual property, then he should point to where the Agreement says that. He cannot, because such a provision does not exist. The Court should dismiss the breach of contract claim accordingly. *E.g.*, *Wilson v. Hartford Cas. Co.*, No. CV 20-3384, 2020 WL 5820800, at *8 (E.D. Pa. Sept. 30, 2020) (dismissing breach of contract claim where insurance contract clearly did not provide for relief requested by plaintiffs).

### F. Plaintiffs fail to state a claim for unfair competition.

Plaintiffs' unfair competition claim (Count XII) fails because, even accepting the allegations in the complaint as true, Plaintiffs and Defendants are not in competition with each other. To state a claim for unfair competition under Pennsylvania law, "a plaintiff must allege that it is in competition with the defendant — that is, that the plaintiff and the defendant supply similar goods or services." *Giordano v. Claudio*, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010) (internal quotation omitted).

Here, Plaintiffs never allege that they are in competition with Defendants. To the contrary, Plaintiffs allege that they are software developers while Defendants are data lead brokers. (Compl. ¶¶ 16, 17, 25.) There is no allegation that Plaintiffs and Defendants are in the same business. And, in fact, the opposite is true. Plaintiffs allege that they licensed software to

11

Defendants because Defendants apparently did not have the means to develop it themselves. (*See* Compl. ¶ 27.)  The Court should therefore dismiss Plaintiffs' unfair competition claim.  *E.g. Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 383 (E.D. Pa. 2020) (dismissing unfair competition claim where, from allegations in complaint, "it is plain that the parties do not supply similar goods or services.").

### G. Plaintiffs fail to state a claim for fraud in the inducement because of the parol evidence rule.

Plaintiffs' fraud in the inducement claim (Count V) fails, because the parol evidence rules bars all of the allegations in the Complaint to support such a claim.  To state a claim for fraud in the inducement, a plaintiff must allege, among other things, a representation that is material to the transaction at hand, made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, with the intent of misleading another into relying on it.  *See, e.g., EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010).  Claims of fraud in the inducement are subject to the parol evidence rule.  *See Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 50, 928 A.2d 186, 205 (2007) ("[P]arol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract.").  Therefore, if a court determines that an agreement represents the entire contract between the parties, then plaintiffs cannot rely on any extrinsic evidence, such as preliminary negotiations or verbal agreements that happened before the contract was executed, to support a claim for fraudulent inducement.  *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 497, 854 A.2d 425, 436 (2004).

Here, Plaintiffs allege that Defendants made "fraudulent representations" that Plaintiffs would "share in any sale of the company" and that these "fraudulent representations" induced Plaintiffs to sign Agreements to "continue to work with Defendants allowing them to use their

12

intellectual property and software." (Compl. ¶¶ 123-128, Ex. B, Ex. C.) Yet those Agreements are fully integrated and are "intended to be the final, complete, and exclusive statement of the terms of the parties' agreements" with respect to "proprietary information, prohibited competition, and intellectual property." (Compl. Exs. B and C at ¶ 12.) Any statements outside of the four corners of the Agreements regarding the use of intellectual property or compensation for that use, such as Plaintiffs' allegations regarding prior representations, are therefore inadmissible under the parol evidence rule. Without these inadmissible allegations, Plaintiffs' fraud in the inducement claim fails and must be dismissed. *E.g. Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 970 (E.D. Pa. 2015) ("Where the parol evidence rule will bar the admission of statements necessary to establish a contract or tort claim, a court may properly grant a motion to dismiss.") (citing *Ross v. Meyer*, No. CIV.A. 12-0998, 2014 WL 2800748, at *11 (E.D. Pa. June 19, 2014)).

## V. CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the Court grant their Motion and dismiss the state law claims in Plaintiffs' Complaint.

          Respectfully submitted,

          COZEN O'CONNOR

          /s/ Brian Kint
          Stephen Miller (PA 308590)
          James Heller (PA 44980)
          Brian Kint (PA 311324)
          1650 Market Street, Suite 2800
          Philadelphia, PA 19103
          Telephone: 215.665.2000
          Facsimile: 215.665.2013

          *Attorneys for Defendants Matthew Morano and Helene Seydoux*

Dated: April 12, 2021