### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLIN SHOLES, *et al.* | : |
| Plaintiffs | : |
| v. | : Civil Action No. 21-1294 |
| TORCHLIGHT TECHNOLOGY GROUP LLC, *et al.* | : |
| Defendants | : |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS AND COMPEL ARBITRATION OF CROSS-CLAIMS
### OF DEFENDANTS TORCHLIGHT TECHNOLOGY GROUP LLC
### AND INDEPENDENCE HOLDING COMPANY

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ................................................................................................. 1
II. FACTUAL BACKGROUND ............................................................................... 2
III. LEGAL STANDARD ........................................................................................... 4
IV. ARGUMENT ........................................................................................................ 6
    A. THE CROSS-CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION. .. 6
    B. THE CROSS-CLAIMS HAVE NOT YET ACCRUED. ...................................... 9
    C. THE EXISTENCE OF A WRITTEN INDEMNITY AGREEMENT BARS THE CROSS-CLAIMS FOR COMMON LAW INDEMNIFICATION. ..................... 10
    D. COMMON LAW INDEMNIFICATION IS UNAVAILABLE BECAUSE THE COMPLAINT ALLEGES DIRECT LIABILITY AGAINST TTG AND IHC. .. 11
V. CONCLUSION ................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000)..................................................................................................10

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).................................................................................................................6

*Antoniak v. Armstrong*,
    No. CV 18-1263, 2019 WL 142352 (E.D. Pa. Jan. 8, 2019) ....................................................8

*Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*,
    No. CV 19-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019) ..................................................5

*Beary v. Container Gen. Corp.*,
    568 A.2d 190 (Pa. Super. 1989)............................................................................................10

*Bracken v. Burchick Const. Co.*,
    No. 1432 WDA 2012, 2014 WL 10790110 (Pa. Super. Oct. 10, 2014) .................................11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..............................................................................................3, 5

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
    584 F.3d 513 (3d Cir. 2009)....................................................................................................6

*China Res. Prod. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*,
    747 F. Supp. 1101 (D. Del. 1990)...........................................................................................9

*Crestar Mortg. Corp. v. Peoples Mortg. Co.*,
    818 F. Supp. 816 (E.D. Pa. 1993) .........................................................................................10

*Eazor Exp., Inc. v. Barkley*,
    441 Pa. 429, 272 A.2d 893 (1971) .......................................................................................11

*EQT Prod. Co. v. Terra Servs., LLC*,
    179 F. Supp. 3d 486 (W.D. Pa. 2016)...................................................................................11

*Esis, Inc. v. Coventry Health Care Workers Comp., Inc.*,
    No. CV 13-2957, 2016 WL 928667 (E.D. Pa. Mar. 9, 2016).................................................11

*F. J. Schindler Equip. Co. v. Raymond Co.*,
    418 A.2d 533 (Pa. Super. 1980)............................................................................................10

*Farmers Exp. Co. v. Energy Terminals, Inc.*,
   673 F. Supp. 715 (E.D. Pa. 1987) ..................................................................................... 12

*Foster v. Pa. R. Co.*,
   201 F.2d 727 (3d Cir. 1953) ............................................................................................. 11

*Freedom Med., Inc. v. Gillespie*,
   No. CIV.A. 06-3195, 2013 WL 3819366 (E.D. Pa. July 24, 2013) ..................................... 3

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
   716 F.3d 764 (3d Cir. 2013) ........................................................................................... 4, 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ...................................................................................................... 7, 8

*Hewitt v. Rose Grp.*,
   No. CV 15-5992, 2016 WL 2893350 (E.D. Pa. Mar. 21, 2016) .......................................... 5

*Mapes v. Chevron USA Prod. Co., a Div. of Chevron U.S.A.*,
   237 F. Supp. 2d 739 (S.D. Tex. 2002) ................................................................................ 9

*Miron v. BDO Seidman, LLP*,
   342 F. Supp. 2d 324 (E.D. Pa. 2004) .................................................................................. 8

*Morris v. Lenihan*,
   192 F.R.D. 484 (E.D. Pa. 2000) ........................................................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................ 6

*Parke Bank v. Kaplin*,
   No. 14-CV-5293, 2015 WL 13857159 (E.D. Pa. July 17, 2015) ...................................... 12

*Parker v. Briad Wenco, LLC*,
   No. Civ. A. 18-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ........................ 5

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
   673 F.3d 221 (3d Cir. 2012) ............................................................................................... 7

*Sirianni v. Nugent Bros.*,
   509 Pa. 564, 506 A.2d 868 (1986) .................................................................................... 12

*Somerset Consulting, LLC v. United Cap. Lenders, LLC*,
   832 F. Supp. 2d 474 (E.D. Pa. 2011) .................................................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................ 5

*Watson v. Allied Tube & Conduit Corp.*,
   No. CV 15-1770, 2016 WL 11698042 (E.D. Pa. Sept. 9, 2016) ............................................... 11

*Zabokritsky v. JetSmarter, Inc.*,
   No. CV 19-273, 2019 WL 2563738 (E.D. Pa. June 20, 2019) .................................................... 7

**Statutes**

9 U.S.C. §§ 1 – 16 .......................................................................................................... 4, 5, 6, 8

9 U.S.C. § 6 ................................................................................................................................. 4

**Other Authorities**

Rule 12(b)(6) ........................................................................................................................... 4, 5

**I.      INTRODUCTION**

Just like Plaintiffs before them, Defendants Torchlight Technology Group LLC ("TTG") and Independence Holding Company ("IHC") fail to attach to their pleadings a document that defeats their claims. They have filed cross-claims for indemnification against Defendants Matthew Morano, Helene Seydoux, and Andrew Guy ("Moving Defendants") based on "a contract pursuant to which [Moving Defendants] agreed to sell and transfer their equity interests in TTG." (TTG Cross-claim ¶ 192; IHC Cross-claim ¶ 193). According to TTG and IHC, this agreement requires Moving Defendants to indemnify TTG and IHC should Plaintiffs recover judgment against them in this litigation because Moving Defendants allegedly breached certain representations and warranties contained in the agreement.

This agreement is conspicuously absent from TTG and IHC's filings, which should alert the Court that something is amiss. Indeed, there is. The agreement, which TTG and IHC specifically rely on and which Moving Defendants *do* provide the Court, contains an arbitration clause under which the parties agreed to submit *any* dispute arising out of or relating to the agreement, including any alleged breach of the agreement, to binding arbitration. The parties also agreed to submit to arbitration any question as to whether a particular dispute falls within the scope of the arbitration provision. TTG and IHC did not attach the agreement, or mention the arbitration clause, *because it conclusively defeats their cross-claims*.

Given the liberal federal policy favoring arbitration agreements, analysis of this Motion is simple. It indisputable that there is an agreement to arbitrate. TTG and IHC specifically rely on the agreement containing the arbitration provision to assert their cross-claims, and therefore concede its existence and validity. That arbitration provision is extremely broad. It delegates to the arbitrator any dispute regarding the agreement, any alleged breach of the terms of the agreement, and any dispute regarding the scope of the arbitration provision. When holding the

parties to the clear language of the arbitration clause, dismissal of TTG and IHC's cross-claims is the only possible outcome.

While the arbitration agreement easily defeats TTG and IHC's cross-claims, they fail for other reasons, as well. For example, they have not yet accrued because TTG and IHC have not suffered any actual loss or made any payment to Plaintiffs. And their cross-claims for common law indemnification fail because there is a written indemnification agreement and because Plaintiffs' claims against them are not based on a theory of vicarious or secondary liability. Any of these grounds is independently sufficient to dismiss the cross-claims, the arbitration agreement notwithstanding. But the result is the same. The Court should dismiss TTG and IHC's cross-claims with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiffs in this action have alleged a litany of meritless and largely duplicative claims against the Defendants. A detailed factual narrative of those claims is not necessary for purposes of this Motion. Suffice it to say that Plaintiffs allege that Defendants breached two "proprietary agreements" and are infringing copyrights by continuing to use certain software without a license to do so. Specifically, Plaintiffs Colin Sholes and Carl Vernon executed separate "proprietary agreements" with TTG under which they named certain software that would be excluded from the agreements and for which they would retain intellectual property rights. (Doc. No. 7, "FAC," at ¶¶ 42-45). Plaintiffs allege that IHC later purchased Moving Defendants' equity in TTG. (FAC ¶ 65). Plaintiffs allege that TTG and Moving Defendants breached the proprietary agreements and that all Defendants, including both TTG and IHC, are infringing the copyright that Plaintiff Cure Consulting supposedly holds on a certain piece of software and that was allegedly excepted out of the Sholes' proprietary agreement. (*See* FAC ¶¶ 44, 81-83).

In their respective Answers to the Complaint, TTG and IHC assert cross-claims for contractual and common law indemnification against Moving Defendants.[1]  They allege that on or about April 15, 2020, Moving Defendants entered into an agreement under which they "agreed to sell and transfer their equity interests in TTG." (the "Agreement").  (TTG Cross-claim ¶ 192; IHC Cross-claim ¶ 193).  A copy of the Agreement is attached as Exhibit A.[2]  The Agreement contains certain representations and warranties that TTG and IHC believe were inaccurate or that Moving Defendants have otherwise breached.  (TTG Cross-claim ¶¶ 193-202; IHC Cross-claim ¶¶ 194-203).  TTG and IHC also assert that under the Agreement Moving Defendants agreed to indemnify TTG and IHC for "any and all losses actually incurred or sustained by, or imposed upon" TTG and IHC because of any inaccuracy or breach of the representations and warranties.  (TTG Cross-claim ¶ 203; IHC Cross-claim ¶ 204).

The Agreement contains an arbitration clause.  (Ex. A, § 9.09).  Under that clause, the parties agreed to "use their best efforts to resolve any dispute arising out of or in connection with this Agreement . . . by good-faith negotiation and mutual agreement." *Id.*  The parties further

---

[1]   TTG and IHC asserted their cross-claims in their Answer to Plaintiffs' Compliant.  (Doc. Nos. 2, 4).  Plaintiffs later filed a First Amended Complaint.  (Doc. No. 7).  Though the First Amended Complaint superseded the Complaint, and will require TTG and IHC to file another responsive pleading, it did not supersede TTG and IHC's cross-claims.  *See Freedom Med., Inc. v. Gillespie*, No. CIV.A. 06-3195, 2013 WL 3819366, at *4 (E.D. Pa. July 24, 2013) (ruling counterclaims asserted in initial answer were not mooted by the filing of an amended complaint).  Moving Defendants therefore file this Motion in accordance with their deadline to respond to TTG and IHC's cross-claims.

[2]   The Court can consider the Agreement when deciding this Motion because TTG and IHC explicitly rely on it in asserting their cross-claims.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A]n exception to the general rule [that a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings] is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citation and quotation omitted).

3

agreed that if they were unable to do so, any remaining dispute would be resolved by binding arbitration:

> Upon and after any such attempt at good faith negotiation and mutual agreement, any remaining dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, and also including claims sounding in contract, tort, statutory or otherwise (each a "**Dispute**") shall be finally resolved and decided by binding arbitration pursuant to the then-applicable commercial arbitration rules (the "**Rules**") of the American Arbitration Association (the "**AAA**"), which Rules are deemed to be incorporated by reference into this Agreement.

(Ex. A at § 9.09(a) (emphasis in original)).

TTG and IHC attempt to assert their cross-claims against Moving Defendants in this Court in direct violation of the arbitration provision in the Agreement. The Court should enforce the arbitration clause and hold TTG and IHC to their contractual commitment to arbitrate. The Court should grant this Motion and dismiss TTG and IHC's cross-claims.

### III.  LEGAL STANDARD

The Federal Arbitration Act allows any party to an arbitration agreement to bring a motion before the court to enforce it. 9 U.S.C. § 6. Such motions to compel arbitration are evaluated under a motion to dismiss standard or a motion for summary judgment standard. "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013).

In this Circuit, such a motion to dismiss is evaluated under the standards of Rule 12(b)(6). *Id.* Under that standard, "courts should examine whether there can be no reading of

4

the [pleading] that could rightly relieve [the complaining party] of the arbitration provision." *See Parker v. Briad Wenco, LLC*, No. Civ. A. 18-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019), *report and recommendation adopted*, 2019 WL 2516059 (E.D. Pa. June 18, 2019). In deciding such a motion, courts may also consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the [pleading] by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). Where the arbitrability of a claim is apparent on the face of the pleading and any documents relied upon by the pleading, the court should dismiss the claim. *Guidotti*, 716 F.3d at 773; *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011).

Here, the Court should apply the 12(b)(6) motion to dismiss standard. Even though TTG and IHC did not attach the Agreement to their cross-claims, they rely on the Agreement to assert their contractual indemnification claims. (TTG Cross-claim ¶ 203; IHC Cross-claim ¶ 204). As a result, the Court can consider the Agreement when ruling on this Motion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Furthermore, a party to an arbitration agreement cannot avoid it simply by failing to call the court's attention to it. *See, e.g.*, *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) ("We are not compelled to apply a summary judgment standard because Ms. Asberry-Jones failed to mention the Arbitration Agreement in her complaint. Indeed, we cannot envision a plaintiff choosing to file a complaint in federal court will affirmatively plead the existence of an arbitration provision."); *Hewitt v. Rose Grp.*, No. CV 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration

5

simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints."). In view of the terms of the Agreement, there is no reading of TTG and IHC's cross-claims that can relieve them of their agreement to arbitrate.

### IV.    ARGUMENT

TTG and IHC's cross-claims fail on several levels. First, they are subject to mandatory arbitration pursuant to the Agreement, and therefore, cannot be brought in this Court. Second, they are wholly contingent on Plaintiffs prevailing against TTG and IHC in the case, and therefore are not yet ripe. Third, the claims for common law indemnification fail because there is a written indemnification agreement that exclusively defines the rights and obligations of the respective parties. Fourth, the claims for common law indemnification fail because Plaintiffs allege that TTG and IHC are directly liable, rather than vicariously or secondarily liable. The Court should dismiss the cross-claims with prejudice.

#### A.    The cross-claims are subject to mandatory arbitration.

TTG and IHC's cross-claims fall squarely within the mandatory arbitration clause of the Agreement. The Federal Arbitration Act, 9 U.S.C. §§ 1 – 16, (the "Act") codifies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the Act, federal courts "must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

When facing a motion to dismiss pursuant to an arbitration provision, courts must consider two questions: (1) whether there is an agreement to arbitrate and (2) whether the dispute at issue falls within the scope of that agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). However, if the court finds

that there is a valid agreement to arbitrate, and that agreement clearly and unmistakably delegates questions about the scope of the agreement to the arbitrator, then the court's inquiry is over and the claim must be dismissed.  Under those circumstances, the court is precluded from answering the second question because the determination of whether the dispute at issue falls within the scope of the agreement is one for the arbitrator, not for the court.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue."); *Zabokritsky v. JetSmarter, Inc.*, No. CV 19-273, 2019 WL 2563738, at *4 (E.D. Pa. June 20, 2019) ("Because a valid arbitration agreement exists and the agreement delegates the question of arbitrability to the arbitrator, we shall grant JetSmarter's motion to compel arbitration.").  *See also Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (internal quotation omitted).

      The Court should enforce the arbitration clause and dismiss the cross-claims under this standard.  For one, there is a valid and enforceable agreement to arbitrate in the Agreement between the parties.  TTG and IHC cannot reasonably dispute this, as they rely on the Agreement, without attaching it, as the basis of their contractual indemnification claims.  (TTG Cross-claim ¶¶ 192-203; IHC Cross-claim ¶¶ 193-204).  The answer to the threshold question of whether there is an agreement to arbitrate is an unqualified yes.

      Second, the question of whether there is an agreement to arbitrate is the only one the Court needs to answer here because the parties clearly delegated questions about the scope of the arbitration provision to the arbitrator.  The arbitration clause applies to "***any*** . . . dispute, claim or controversy arising out of or relating to [the] Agreement or the breach, termination, enforcement,

7

interpretation or validity thereof, ***including the determination of the scope or applicability of this Agreement to arbitrate*** . . . ."  (Ex. A, § 9.09 (emphasis added)).  It cannot get more clear or unmistakable than that.  As a result, the question whether this particular dispute falls within the scope of the arbitration provision is a one for the arbitrator.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("Under the Act and this Court's cases, the question of who decides arbitrability is itself a question of contract.  The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.").  Once the Court determines that the parties have agreed to arbitrate, it must dismiss the cross-claims without further inquiry regarding its applicability or scope.

   In any event, the cross-claims fall within the scope of the arbitration provision.  TTG and IHC assert that they are entitled to indemnification because the Moving Defendants allegedly breached certain representations and warranties in the Agreement.  (TTG Cross-claim ¶¶ 193-202; IHC Cross-claim ¶¶ 194-203).  Again, the arbitration clause applies to "***any***" dispute "***arising out of or relating to***" the Agreement or any "***breach***" of the Agreement.  (Ex. A. § 9.09 (emphasis added)).  "When an arbitration clause provides for arbitration of all matters 'arising under' or 'arising out of' a particular agreement, the clause is typically construed broadly to suggest that a given dispute is arbitrable."  *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004).  That is exactly the case here.  The Court should hold TTG and IHC to their obligation to arbitrate their claims for indemnification and dismiss them with prejudice.

   The fact that Plaintiffs initiated this litigation does not change the analysis or the outcome.  An agreement to arbitrate is enforceable where a plaintiff institutes an action and a defendant asserts a cross-claim for indemnification.  *See, e.g.*, *Antoniak v. Armstrong*, No. CV

18-1263, 2019 WL 142352, at *4 (E.D. Pa. Jan. 8, 2019) (compelling arbitration of cross-claim for indemnification); *Mapes v. Chevron USA Prod. Co., a Div. of Chevron U.S.A.*, 237 F. Supp. 2d 739, 746 (S.D. Tex. 2002) (same). An agreement to arbitrate is also enforceable where one party institutes ligation that is outside the scope of an arbitration agreement and the other party asserts a counterclaim that is within the scope of the arbitration provision. *E.g. China Res. Prod. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 747 F. Supp. 1101, 1109 (D. Del. 1990) (enforcing arbitration agreement with respect to counterclaim only). No matter how a particular claim comes to the court, if that claim is within the scope of an arbitration agreement, the court must enforce the arbitration agreement and dismiss the claim.

But here the court does not need to go that far because the arbitration provision clearly shows the parties intended to submit all disputes arising out of the Agreement to arbitration, including questions about the applicability or scope of the arbitration provision. TTG and IHC apparently believe that the arbitration provision does not apply because the dispute is not "solely between or among the parties" to the Agreement, because Sholes, Vernon, and Cure Consulting are parties to the litigation as well. (Ex. A § 9.09(a)). Of course, the cross-claims do not involve Sholes, Vernon, and Cure and are based on different allegations than those asserted by them. But even putting that aside, as explained above, the question of whether the dispute is "solely between or among" the parties, and therefore within the scope of the arbitration agreement, is one for the arbitrator, not for the Court. The Court should dismiss the cross-claims pursuant to the arbitration provision.

   **B.**  **The cross-claims have not yet accrued.**

TTG and IHC's cross-claims for indemnification also fail because they have not yet accrued. Under Pennsylvania law, "[i]t is well established that before indemnification rights accrue, the party seeking indemnification must pay the claim or verdict damages before

9

obtaining any rights to pursue an indemnification recovery." *Beary v. Container Gen. Corp.*, 568 A.2d 190, 193 (Pa. Super. 1989). A contingent or potential right to indemnification is not enough to assert an indemnification claim. *F. J. Schindler Equip. Co. v. Raymond Co.*, 418 A.2d 533, 534 (Pa. Super. 1980) ("It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment, as in the present case, is premature.").

TTG and IHC's claims here are only potential and, thus, premature. They do not allege, nor could they, that they have paid anything to Plaintiffs or any other party that would trigger their alleged indemnification rights. Their cross-claims will come to fruition, if at all, only if there is a judgment against them, they pay on that judgment, and that payment falls within the scope of the indemnification clause. They cannot properly assert a claim that is based upon contingency after contingency. *See, e.g.*, *Crestar Mortg. Corp. v. Peoples Mortg. Co.*, 818 F. Supp. 816, 820 (E.D. Pa. 1993) (dismissing indemnification claims where "Crestar will suffer actual loss only if the property is sold for less than Crestar is owed (and if Gottfried does not pay the deficiency."). The Court should dismiss the cross-claims for this reason as well.

**C.      The existence of a written indemnity agreement bars the cross-claims for common law indemnification.**

TTG and IHC's cross-claims for common law indemnification fail for another reason — they are barred by the written indemnity agreement. Under Pennsylvania law, a claim for indemnification is viable in two situations: (1) where there is an express contract to indemnify (*i.e.,* contractual indemnification), or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts (i.e., common law indemnification). *See, e.g., Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000). Those two claims, however, are mutually exclusive. Where parties have an express contract for

10

indemnification, that contract exclusively defines the respective rights and duties of the parties, and common law indemnification does not come into play. *Eazor Exp., Inc. v. Barkley*, 441 Pa. 429, 431, 272 A.2d 893, 895 (1971) ("[W]here, as here, there is a written contract setting forth the rights and duties of the parties . . . [t]he contract must then govern."); *Foster v. Pa. R. Co.*, 201 F.2d 727, 731 (3d Cir. 1953) ("We agree with the District Court in its conclusion that, having entered into a contract on the matter, the rights of the parties are to be determined thereby, rather than by common law rules of indemnity and contribution."). *See also, e.g.*, *Watson v. Allied Tube & Conduit Corp.*, No. CV 15-1770, 2016 WL 11698042, at *4 (E.D. Pa. Sept. 9, 2016) ("If an express contract to indemnify exists, common law indemnification is not available."); *Bracken v. Burchick Const. Co.*, No. 1432 WDA 2012, 2014 WL 10790110, at *7 (Pa. Super. Oct. 10, 2014) ("Common law indemnity concerns are irrelevant to our determination here since the parties entered into a written contract of indemnity that specifically sets forth the rights and duties of each party to the contract.").

Here, both TTG and IHC allege that Moving Defendants, entered into the Agreement, under which they "agreed that they would severally indemnify and defend" TTG and IHC. (TTG Cross-claim ¶ 202; IHC Cross-claim ¶ 202). Therefore, by TTG and IHC's own allegations, any indemnification rights held by the parties are exclusively defined in the Agreement. Any claim for common law indemnification must fail. *See, e.g.*, *Esis, Inc. v. Coventry Health Care Workers Comp., Inc.*, No. CV 13-2957, 2016 WL 928667, at *7 (E.D. Pa. Mar. 9, 2016); *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 496 (W.D. Pa. 2016).

### D. Common law indemnification is unavailable because the Complaint alleges direct liability against TTG and IHC.

TTG and IHC's cross-claims for common law indemnification would fail even if they were not barred by the Agreement, which they are. Under Pennsylvania law, the right to

common law indemnification exists where a party without fault is liable for another party's conduct solely by operation of law. *Sirianni v. Nugent Bros.*, 509 Pa. 564, 571, 506 A.2d 868, 871 (1986) ("[Common law indemnity] is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss."). A common law indemnification claim is unavailable to a party that has any degree of fault. *Id; Parke Bank v. Kaplin*, No. 14-CV-5293, 2015 WL 13857159, at *5 (E.D. Pa. July 17, 2015) ("In *Sirianni*, the Pennsylvania Supreme Court emphasized that a party may not seek indemnification if they had ***any part*** at all in the events that caused the injury.") (emphasis added); *Farmers Exp. Co. v. Energy Terminals, Inc.*, 673 F. Supp. 715, 722 (E.D. Pa. 1987) ("If this party participated in the events leading up to the injury, and was not implicated merely because of some legal relation between the parties, then the party cannot be indemnified under primary/secondary liability theory.").

      TTG and IHC have no claim for common law indemnification under this rule. Plaintiffs do not allege that TTG or IHC are liable by operation of law. Rather, Plaintiffs allege that TTG and IHC directly participated in the alleged harm. Plaintiffs do not bring any claims against TTG or IHC based on a theory of vicarious or secondary liability. There is no mention of indirect, secondary, or vicarious liability in the Complaint or the First Amended Complaint at all. If TTG and IHC are found liable to Plaintiffs, it will be because of their own conduct, not the conduct of Moving Defendants. The Court must therefore dismiss the cross-claims for common law indemnification. *See, e.g.*, *Morris v. Lenihan*, 192 F.R.D. 484, 489 (E.D. Pa. 2000) (dismissing indemnification claim of defendants who "are accused of violating Morris' constitutional rights, and thus the Bristol defendants' liability would not come about by the

operation of law or through a legal relationship, but through their own independent acts or omissions.").

## V. **CONCLUSION**

For the foregoing reasons, Moving Defendants respectfully request that the Court grant their Motion and dismiss TTG and IHC's cross-claims for contractual and common law indemnification with prejudice.

Respectfully submitted,

COZEN O'CONNOR


*/s/ Stephen A. Miller*
Stephen A. Miller (PA 308590)
James Heller (PA 44980)
Brian Kint (PA 311324)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215.665.2000
Facsimile: 215.665.2013

*Attorneys for Defendants Matthew Morano, Helene Seydoux, and Andrew Guy*

Dated: May 3, 2021